[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
 I. Background
This matter arises on the motion of the remaining Defendant Dale P. Hourigan. a member of the Connecticut State Police, to strike as against him the First and Second Counts of the Revised Complaint dated December 29, 1998 of the Plaintiff Jason O'Brien. The court has previously granted the motion to dismiss against them of the other listed Defendants William T. Perry and Nicholas Spratto, members of the Town of Southington Police Department. Although the Revised Complaint is in three counts, only the First and Second Counts are directed against the Defendant Hourigan.[1]
A motion to strike is the proper vehicle to contest the legal sufficiency of a complaint, counterclaim or cross-complaint, or CT Page 2561 any prayer for relief therein. Practice Book § 10-39 Ferrymanv. Groton, 212 Conn. 138, 142 (1989). Only the grounds specified in the motion may be considered. Meredith v. Police Commission,182 Conn. 138, 140 (1980). "[A]ll the facts well pleaded and those facts necessarily implied from the allegations are taken as admitted." Amodio v. Cunningham, 182 Conn. 80, 82-83 (1980). "[T]he court must construe the facts alleged in a pleading in the manner most favorable to the plaintiff." Rowe v. Godou,209 Conn. 273, 278 (1988). "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them." Ferryman v. Groton, supra, 142. If the facts provable under the allegations would support a defense or cause of action, the motion to strike must fail. Id.
The incident underlying this action occurred on February 9, 1996, when the Plaintiff, then a 16-year old student at Southington High School, was arrested for a narcotics related offense. The arrest took place at Southington High School. The arresting officers were accompanied by a television crew, who televised the proceedings both in and outside of the school, and at the Southington Police Station. The Plaintiff has acknowledged his guilt and the wrongfulness of his actions for which he was arrested.
The Revised Complaint does not specifically allege that either the Defendant Hourigan or the dismissed Defendants Perry and Spratto conducted the arrest. Instead, the Revised Complaint alleges that the actions complained of were in furtherance of an "unlawful conspiracy [among] the defendants and their co-conspirators."
Plaintiff's complaint focuses on the public and publicized manner in which the arrest was conducted. The First Count alleges that by this conduct, the Defendants violated the Plaintiff's "right to privacy, which is secured to him by the provisions of Connecticut law." The Second Count alleges intentional infliction of emotional distress.
The Plaintiff had initially brought suit in the United States District Court asserting that the Defendants' conduct and events of arrest alleged in this action violated his right to privacy under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution of the United States, as well as his right to be free from unreasonable arrest under the Fourteenth Amendment
thereto, pursuant to 42 U.S.C. § 1983. That action terminated CT Page 2562 by the granting of the Defendants' motion for judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c).Jason O'Brien v. William T. Perry, et al, No. 3:97 CV-1854 (D. Conn. September 29, 1998) (Atherton, U.S.D.J.)
The Plaintiff then brought this action. The counts will be considered in order.
 II. First Count
The First Count claims an invasion of privacy.
Connecticut first recognized the tort of invasion of privacy in Goodrich v. Waterbury Republican-American. Inc., 188 Conn. 107
(1982). In recognizing this right, the court noted that the law of privacy had not developed as a single tort, but rather as a complex of "four distinct kinds of invasion of four different interests of the plaintiff which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff `to be left alone.'" Id., 127-28, quoting Prosser, Torts (4th Ed. 1971) § 117, p. 804.
Goodrich set forth the four categories of invasion of privacy as follows: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public. Id.
Plaintiff, in his opposing memorandum, does not delineate which of those four categories of invasion of privacy is being relied upon by him, nor does he provide any supporting analysis for his claim. The gist of Plaintiff's claim, however, is that the public manner in which his arrest took place, and the fact it occurred on school grounds in some way violated his privacy right.
In order to constitute a violation of any right of privacy, "[t]he facts disclosed to the public must be private facts, not public ones." Tucker v. Bitonti, 34 Conn. Sup. 643, 646-47
(1977), quoting Prosser, supra, p. 810. The arrest of an individual for a narcotics offense, whether or not the offense involved only "possession of a small quantity of marijuana" as alleged, is not a private matter. As noted in Goodrich, supra, CT Page 2563 132-33, "the right of privacy must give way when balanced against the publication of matters of public interest." In arriving at its conclusions terminating the Federal Court action, the District Court noted that, as in this case, "the Plaintiff does not identify . . . any authority that an arrestee is entitled to keep the fact of the arrest private." O'Brien v. Perry, et al.,
(D. Conn.), supra, 10. Arrests are matters of legitimate public interests. Reeves v. Fox Television Network, 983 F. Sup. 703, 709
(N.D. Ohio 1997). "The public has a legitimate interest in the enforcement of narcotics law . . ." Dale v. Bartels, 552 F. Sup. 1253
(S.D.N.Y. 1982), rev'd on other grounds, 732 F.2d 278 (2d Cir. 1984).
The Plaintiff alleges that the Defendant's conduct complained of was in part "for the specific purposes . . . of portraying him to the general public in a false light." A false light invasion of privacy claim requires that the matter published concerning the plaintiff is not true. Goodrich, supra, 131. The Revised Complaint fails to allege that published fact was untrue. In fact, the Revised Complaint specifically alleges that the Plaintiff "acknowledged his guilt and the wrongfulness of his actions" to school officials on the day he committed the subject offense.
There are consequences to the commission of a criminal offense that may be unpleasant. A valid arrest does not violate one's right of privacy. The motion to strike is granted as to the First Count.
 III. Second Count
The Second Count alleges liability for intentional infliction of emotional distress. In order to prevail on this cause of action, the Plaintiff must establish four elements. These are "(1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress: and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. NewHaven, 220 Conn. 225, 267 (1991). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause CT Page 2564 injury that is the gravamen of the tort. . . ." Id., quotingHustler Magazine v. Falwell, 485 U.S. 46, 53, 108 S.Ct. 876,99 L.Ed.2d 41 (1988). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 19 (1991).
Whether a defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy these elements" is a question, in the first instance, for the court." Id., 18. "Only where reasonable minds can differ does it become an issue for the jury." Id.
The Court's ruling on the First Count is in essence dispositive of this Second Count. Petyan v. Ellis, 200 Conn. 243,252-54 (1986) held that an absolutely privileged statement cannot be the basis for the intentional infliction of emotional distress, even if the statement was libelous per se and made with malice. The rationale of the ruling is that public policy requires that a person be able to state candidly his or her position in or pertinent to a judicial or quasi-judicial proceeding without fear or recrimination. Id., 250-51.
The analogy holds here. Public policy militates that law enforcement officials not hesitate to effectuate an otherwise valid arrest not involving the use of unreasonable force for fear of recrimination if the arrestee is displeased. To hold otherwise would open a Pandora's Box of complaints, and shift the emphasis away from the act of the perpetrator that was the basis for the arrest.
In Wilson v. Layne, 141 F.3d 111, 116 (4th Cir. 1998) (Murnaghan, J. dissenting), the Fourth Circuit concluded that media presence at the execution of an arrest warrant furthers a legitimate law enforcement purpose in deterring crime, and in protecting the enforcement officers from harmful resistence by the arrestee. In addition, as noted by Judge Atherton in her ruling, supra, 11, terminating the federal action that preceded the institution of this action, "the presence of the media also potentially serves an oversight function in similarly reducing the possibility of policy misconduct." Judge Atherton further noted that "the Court agrees with the defendants that the media exposure of plaintiff's arrest could have served the legitimate function of discouraging drug use by other young people." Id. CT Page 2565 This Court concurs.
The motion to strike is granted as to the Second Count.
 IV. Summary
The motion to strike is granted in its entirety.
 David L. Fineberg Superior Court Judge.